## ECHOLS v. DERRICK.

A. purchased at sheriff's sale, without notice, a slave which had been previously conveyed by deed in trust. The deed had not been recorded in the manner required by the statute of frauds. But, after the sheriff's sale, and before the expiration of twelve months from the date of the deed, the trustee sold the property and executed the trust. It was held.
1. That the necessity of registry in such case is dispensed with, the term of twelve months allowed for registry not having expired.
2. That the adverse possession of A. under his purchase, made no difference, and did not prevent the trustee from executing his trust.

WILLIAM DERRICK brought an action of trover in Madison Circuit Court, against William Echols, to recover the value of a slave named Lewis. At the spring term, 1827, of the Court, on the plea of not guilty, a verdict and judgment were rendered for the plaintiff, for $543 42, damages.

By a bill of exceptions taken by the defendant at the trial below, the facts proven appear to have been as follows: One William Fleming, sold and delivered to one David Royster, certain slaves, among whom was one named *Jim;* and to secure the payment of the purchase money, Royster executed a deed of trust of the negroes in Fleming's favor. Royster being in possession, sold the slave Jim to Derrick, the plaintiff below. Soon after, Fleming, hearing of this, informed Derrick of his lien on the negro, which was the first notice Derrick had of its existence. Royster, then,

to secure Derrick in his purchase, executed, on the 29th of March 1823, a deed of trust of another slave named *Lewis*, (the slave sued for,) to one William Roundtree, as trustee, with condition that the slave Lewis should remain in Royster's possession till the title to Jim failed, in which case the trustee was to sell him, to reimburse Derrick for his loss. The parties resided in Madison, and both the deeds were recorded, but neither of them had been proved or acknowledged in open Court, as required by the statute of frauds, but were admitted to record on probate made before the clerk of the County Court only. After the making of those deeds, Echols, the defendant below, obtained a judgment and execution against Royster, and the sheriff, under this execution, levied on the slave Lewis, and sold him as the property of Royster, and Echols became the purchaser, obtained the possession, and has retained him ever since. After this sale, Royster failed to pay Fleming, and Jim was sold under the deed of trust to satisfy his claim, and Derrick bought him. Derrick then procured Roundtree, his trustee, to sell Lewis under his deed. At the sale of Lewis, Echols attended and gave notice of his claim and previous purchase, and forbid the sale; but the trustee proceeded, nevertheless, to sell him, and Derrick bought him also. The sales made under the deeds of trust, were both made within one year from their respective dates. Upon this evidence, the defendant below moved the Court to instruct the jury, that if they believed from the evidence, that the plaintiff had no actual notice of the deed of trust for the benefit of Fleming, when he purchased and obtained possession of the boy Jim, and paid his price to Royster, that the title of said Derrick was good against the lien of Fleming, unless his deed of trust had been proved or acknowledged in the County or Circuit Court of Madison, and recorded in twelve months after its date; and consequently, that the plaintiff purchased the boy Jim in his own wrong, and could not thereby acquire a right to sell Lewis under his deed. Also, that unless the deed of trust to Roundtree had been proved or acknowledged in the County or Circuit Court of Madison, and recorded in twelve months from its date, it was inoperative against a judgment creditor of said Royster. But the Court refused so to charge, and on the contrary, instructed the jury, that although the clerk of the County Court had no authority to receive probate or acknowledgement of the deeds in question, yet if,

they should be satisfied from the evidence, that the sales had been made under those deeds within twelve months from their dates, respectively, that the title of the purchaser would be good, and could not be affected by a failure to prove and record them afterwards; and that the *cestuy que trust* being the purchaser, would make no difference, nor would the adverse possession of the defendant, under his purchase, vary the case, or affect the title of the plaintiff. Echols now here assigns for error, that those instructions were improper.

KELLY and HUTCHISON for the plaintiff in error, argued that the deeds of trust were improperly admitted to record; that the statute requires such deeds to be proved in open Court, *a* that therefore the registry was a nullity, and could not operate as constructive notice; *b* that Echols was a *bona fide* purchaser without notice, and that the conveyances as to him were good; *c* that the execution of the trust could not operate in a case like this, when the deed of trust was not regularly registered, and the defendant had adverse possession as a purchaser without notice.

*a* Laws of Ala p. 244.
*b* Astor v. Wills, 4 Wheaton 466. 488.
*c* Ibid. 487.

M'CLUNG, for the appellee.

By JUDGE WHITE. The first inquiry is, whether Derrick, by purchasing the boy Jim of Royster, without *actual notice* of Fleming's lien, acquired such a title as to render it useless, and therefore prejudicial to Royster's creditors, for Roundtree to execute the trust in the deeds to him, by the sale of Lewis for the indemnity of Derrick? If this were the case, Fleming's rights would have been prejudiced without any default on his part. He certainly was authorized to take the deed with the condition it contained, and to permit the property to remain with Royster; nor could it be expected that he should know by anticipation, who Royster designed selling him to; and therefore could not be required to give actual notice to prevent imposition. There is no evidence that he connived at, or even knew of Royster's intention to sell to Derrick, before the sale; on the contrary, his conduct after that event, in notifying Derrick, shewed fairness of intention in him, and had the effect to induce the latter to adopt a measure which prevented his ultimate injury. The law did not require Fleming to prove his deed in open Court and place it upon record to give constructive notice under

twelve months, and as that time had not transpired when the sale took place, he was in this also without default. We are not then prepared to say that Fleming's title to Jim could have been destroyed by the establishment of Derrick's, when Fleming did nothing but what the law permitted, and left undone nothing which it required; nor can we conceive, that the proof and registration of his deed, according to the provisions of the statute of frauds, after the sale, if embraced by them at all, could have answered any efficient or valuable purpose.    But it is said, that the deed made to indemnify Derrick against loss, by failure in the title to Jim, not having been proven in open Court, and recorded, could not prevail against Echols, who was a judgment creditor of Royster, though his judgment was subsequent to the date of said deed.   This objection is also met by the fact, that the twelve months given by law to prove such deeds in open Court and have them recorded, had not elapsed when the sale under the deed was made.    This being done, its force was spent, its design effected by the execution of the trust, and none of the intentions of the law could have been answered by its subsequent proof and registration.   We are therefore of opinion, that there was no error in the judgment of the Circuit Court.

Judgment affirmed.

JUDGE SAFFOLD, not sitting.